The 4th District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good morning. We are here on a consolidated matter. Case numbers 4-2-3-0-5-7-7 and 4-2-3-0-6-8-6, Ingray J.M. Minor versus Scott M. for the appellant. Appearing is Nathan Davidson. Appearing for the appellee is David Robinson. Mr. Davidson, are you ready to proceed? Yes, Your Honor. I would note I do represent Scott M. and also Mother Rebecca M. as well. Thank you. Please proceed. Your Honor, we are here today on a matter that is involving a petition of adjudication hearing, or excuse me, a petition of adjudication that was filed, I believe it was March 14, 2023, in a Rock Island County 14th Circuit case 23-JA-33. The notices of appeal are in regards to the court's findings or orders on June 1, 2023, June 9, 2023, as well as a notice of appeal was filed for the motion to reconsider on August 4, 2023, as well. I do not want to simply reiterate what is already in my brief. It is there for you to read as necessary. However, there are a few points that I do think I want to make sure are brought to light. The, I guess, first argument that I would make is, in this case, there are concerns as to whether the trial courts had a sufficient understanding of the Juvenile Court Act and of their handling of the adjudicatory hearing and the dispositional hearing, and that it calls into question the integrity of the judicial process, as well as competence in the fairness of the courts, as well as the deprivation of the respondent's rights to the custody of their child, and that the proceedings, therefore, lacked the elements of fundamental fairness and, therefore, violated the respondent's due process rights. I suppose I will start with the issue of the adjudicatory hearing. I'll strike that, actually. I believe I laid out in several different portions in my brief concerns that the trial court judge either was misinformed, misunderstood, or was conflating the standards, proceedings, findings of an adjudicatory hearing and a dispositional hearing. And, again, I do not want to simply just repeat what is in the common law record and the record of appeal, but I would note, let's see here, that it seems at various points the court used language that indicated that it was setting matters for a dispositional hearing before an adjudicatory hearing had taken place, that the several times, I believe, the court referred to the hearing or hearings as an adjudicatory dispositional hearing, and I believe, let me see here, I believe it was at the motion to reconsider, though there are other instances, I believe. I believe one is in when the minor was stipulating to the facts of the petition, but I believe the court indicated. Let me stop you there. Tell me about minor stipulating to the neglect. I don't recall ever having seen a case where the minor stipulates to a parent's neglect and really doesn't even provide any facts in support of it. Is this something that occurs in your county on a frequent basis, or is this rare? I've not seen it. Your Honor, I will simply say, to the best of my knowledge, again, reviewing case law, there is no foundation for it, and if anything, I believe I did not mention this in my brief, in part because it is, frankly, unclear to me as to when the adjudicatory hearing supposedly took place, whether it was when the minor stipulated, whether it was when the findings to support an adjudicatory order was put in place, but long story short, I believe it was, where is the statute? 705-ILCS-405-2-18 that deals with, gosh, here it is, 2-18-4C, previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible as evidence. However, there's a big caveat. However, no such statement, if uncooperated and not subject to cross-examination, which did not date, again, depending on when the court believes the adjudicatory hearing even took place, there simply was, there was no cross-examination, there was no opportunity for a cross-examination. The minor stipulating was stipulating via Zoom, and that was the only time that the minor had appeared before the court. I believe it has been indicated or can be seen, at least in the dispositional reports filed before the dispositional hearing and possibly before the adjudicatory hearing, that the minor was placed in the UnityPoint Hospital, and supposedly that was the grounds for why he could not appear in person. It is unclear to me on that, but essentially, the respondents had no opportunity to even present an argument or even and I will go into this later, but regarding the petition itself, know exactly what they are trying, what allegations exactly are being brought against them that they can consider to argue against or proceed appropriately. And I would bring your attention to the, it looks as if the findings in support of an adjudicatory order as well as the dispositional order, if you look at those two documents, it does seem that those documents were mixed up. One page, let's see, I have to pull it up really quick. I know, I think it's a dispositional, starts with paragraphs that are indicated by an uppercase letter. David, can I ask you a question? That is correct. Yes, sir. Following up on what Justice Turner asked, regardless of whether we've ever seen this, what's the authority? I mean, I'll say that I'm in my 49th year in practice and I've never seen it. So, what's the authority for such a finding in a neglect petition? And to get back to what Justice Turner did say, I guess to both of your points, one, I'm not aware of any authority. I tried to find... So, why doesn't that resolve the case for us right there? Arguably, I believe it does. Struggling through all these other statutory interpretations, why doesn't that just take care of the whole thing? I arguably, I believe it does, Your Honor. I believe, to be frank, there are, as you indicated, there are a variety of other issues that could be grounds to resolve the matter. I think simply that there is no basis for the minor being allowed to stipulate to the factual basis in the petition and that being sufficient in and of itself for a finding to support a petition of adjudication alone could be enough to resolve this matter. And it is also my understanding... So, let me stop you there. To resolve this matter, what relief are you requesting? I can't, frankly, glean it from the brief. What are you asking this court to do? Yes, Your Honor. I believe I was initially asking for the case to be dismissed. I think another result that would be possibly also appropriate would be to remand it back down to the trial court with instructions as how to proceed in such matters. I will say having been and still practicing in front of that court... What would you have us tell the trial court to do if we remanded it? Essentially, I think this needs to, at the very least, start over from the adjudicatory hearing. The minor stipulation in and of itself is insufficient. If the state wants to present any evidence or arguments that go beyond that, or if the state wants to submit that as evidence to be considered amongst other things, that would at least be in line with due process, I believe. As I've indicated in other places in my brief, there are potential issues I have with the specificity of the case. Again, on that specific issue, I would argue on behalf of my client that the case be dismissed prejudiced. However, in the alternative, having it remanded with instruction as to how to proceed in an adjudicatory hearing and dispositional hearing, as well as what is and isn't allowed to be sufficient. This is a really unique case. We have an order of protection. The minor, by court order, can't go back and live with his parents. And yet, we have the state asking for a neglect finding. If we remanded it, I am worried about what the trial court is going to wonder what we're instructing it to do. If you can be more explicit, I would appreciate it. I know there was a question of dependency versus neglect. I'd also like to hear some arguments on that question. Your Honor, as to the dependency argument, it does appear at least, it seems clear from the record that there were conversations occurring that were not in the record itself. Some of those conversations apparently were regards to whether this was going to be going forward as a neglect matter or if it was going to be changed to a dependency matter. I would note that either way, the petition for adjudication of worship and its prayer simply states for relief under the Juvenile Court Act, not specifically under the neglect statute. I believe also in the adjudicatory order, the court found that it was fact-sufficient for the petition and not necessarily for a finding of neglect in and of itself. I believe the prosecution may want to reconsider how it perceives or how it files its case, but that is ultimately for the state to decide on that matter. Mr. Davidson, I think you said you're familiar with practicing in front of this court. Is that just an effort at an agreed dependency leading to an independence that somehow went off the rails? To be frank, Your Honor, it took me a considerable amount of time reviewing these records to even understand what exactly was occurring when and what were the intents of the various parties. Again, it seems that at least trial counsel for the respondents believed that this was to be some sort of dependency finding that they were moving towards and that it was their understanding that that was the agreement of all the parties. I believe at least the state and perhaps DCFS indicated that because the minor stipulated to the petition of neglect, the court essentially should find neglect and not dependency. Even though, again, I would note that going off of what is before us in the finding to support adjudicatory order, it simply says the fact supporting the petition, not necessarily what the state is asking for, if the state asked for the wrong thing, arguably the state did not prove its burden by the abundance of the evidence, the case would be dismissed, and then it could be determined at a later point whether that matter could be brought back. But to get back to your point as to me practicing in front of this court and another court that how things were done in that courtroom with those particular individuals was the norm, and a lot of things were done fairly systematically. I would note that I imagine that if this were to be remanded back on appeal, it would go back to the original trial court judge. However, that trial court judge is no longer handling juvenile matters, and the prosecutor is no longer with the state. He is now a judge. So, I suppose I don't know exactly what would happen if this were to be remanded back as to whether the trial court judge would pick up this matter once again, or if it would go to the new judge that has taken over the matter. Okay, I'm sorry, I got you off your track. I'm sorry, what was that, Your Honor? I think I got you off track, and I apologize. I just thought maybe, I mean, I'm familiar with no-fault dependencies, you know, people coming in and everybody agreeing so that they can initiate some service process that, you know, some process of servicing the minor that they would otherwise wouldn't qualify for. Yes. And I assumed maybe that's what was intended here. It seems at the very least that's what the respondent believed what was happening. I believe in the motion to reconsider, they indicated that it was their belief that the minor was stipulating to a dependency finding. Because the no-fault dependency wouldn't necessarily affect her employment, whereas the neglect was going to. Correct, and I believe the whole idea was it was a lockout situation, and the kid was going to need some services. Somebody's got to pay for those services, so you all get together, you work out an agreed disposition, and they get the services provided. That's the process I'm familiar with. I've just never seen it done in this way. I haven't either, Your Honor. I'll be frank. I've learned a lot of different things about how these types of cases are handled through research and preparation of this, especially in terms of how it has been done in that courtroom in the past. I will say it was a good learning experience. Well, we appreciate your candor, and it does help give us a little bit of guidance on how it is we're here. Yes, not a problem, Your Honor. As I think you pointed out, there are a lot of other issues that this case could potentially be argued or resolved on. I don't necessarily disagree that the issue with the minor stipulating in and of itself would be grounds to remand this back to the trial court, at least, with instructions of what is and isn't interesting. While this case was up on appeal, a motion to reconsider was filed and heard at the trial court level. The current judge believes that the court lacks jurisdiction while it's on appeal. Hopefully, we won't see a repeat of similar issues. You are out of time, but you will have rebuttal, Mr. Robinson. Can you hear me? Gotcha. Thanks, Judge. May it please the court, counsel, I'd like to take a contrary position in this case to opposing counsel and provide a little grace to the court in this case. I, too, have read this report of proceedings about five times, and I was not confused after the first time I read it. The court entered an adjudicatory order date stamp June 9th, outlining the court's findings. Then the court later entered date stamp March 14th, the – I'm sorry, that's the petition. The state – I mean, the court then, on June 9th, entered the dispositional order on the same day. They're both date stamped the same day. The reason the court did this, and it's obvious from the record when you read through it, is that the parents, the adoptive parents in this case, no longer wanted anything whatsoever to do with the child because of the acting out. At multiple points in the report of proceedings, the court was very gracious with the family. And I believe the direction that the court was intending to go is the direction that Justice DeArmond outlined in what is sometimes referred to as sort of a no-fault dependency proceeding. That didn't happen here in part because – and I emphatically disagreed with the opposing counsel – that the state's petition did not outline the statute. The statute is clearly marked at the top of page 2 of the Petition for Adjudication of Worship. They move forward under the neglect provision. I'll note that any ambiguity in the record must be construed against these parents. Justice Turner's point about relief is a good one. The relief they're seeking here on appeal appears to be the same relief they've been seeking from the beginning, which is they no longer want to parent this child and the adoptive mother simply wants a specific type of adjudication so that it doesn't impact her employment with DCFS. With all due respect, and I think the record makes clear, that determination really should have nothing to do with what's in the best interest of the child. And I think it was Justice Turner who said, why doesn't that just take care of the whole thing? Meaning, why doesn't the fact that the place take care of the whole thing? Well, it doesn't take care of the whole thing because the whole thing is about the best interest of the child. And a clear reading in my view of this transcript is that the reason the court was so focused on receiving a stipulation and making sure that the child understood what was going on once they were represented and appeared by Zoom was that everyone else in the courtroom was on the same page. Everyone else in the courtroom understood they wanted the parental rights terminated. It is a court order that restricts this juvenile from coming back to the house, but that court order was only entered after the parents locked him out and went and sought that order from the court. The parents are the ones who literally locked him out, not just in a figurative sense, but in a literal and legal sense. The reason why I don't believe counsel can answer the question about what relief they're seeking is because they want the relief that the court already provided. They want an adjudication and a disposition moving down the road to get this child treatment so that the parental rights can be terminated. They don't want this child back in their home. That goes to Justice Turner's point again. What happens if this goes back? So, they're going to get some additional opportunity to make the case of how and why the child should come back to the home? No, they don't intend to do that at all. In fairness to the court and to the prosecutor, there were a number of lawyers involved in this. There was a GAL assigned to the child, an attorney assigned to the child, because I think there were potential collateral criminal issues involved. The parents were represented by counsel. In fact, the court, I think, graciously said, look, if you think this is going to impact, if this neglect issue, when they discussed it at the dispositional hearing, if you believe this is going to impact your employment, I don't think it has anything to do with this proceeding, which is legally correct. But if you've got some argument to make, I'll hear it. They filed a motion. They appeared in court again. And the court said, look, I haven't heard anything here today that leads me to believe that how this impacts your employment should be a basis upon which I change my decision about disposition. And I believe the mother's response on page 13, record page 42, was okay. All of these issues that counsel brings up now have been affirmatively acquiesced to or are not reflected in the record. Both of those burdens are on the parents here on appeal. The parents came in. There was an adjudication. They acquiesced to it. They may not have liked the ultimate outcome once she found out that it was going to impact her potential employment with DCFS. But that, as the court pointed out, has absolutely nothing to do with the child. Zero. They wanted to make sure that this child was locked out. They accomplished that goal. Then they were seeking to have the court assist them very directly. And I believe it was in at the June 1st hearing when the prosecution came in and talked about how they wanted to speed up the adjudication as quickly as possible in disposition because the hospital was concerned. The hospital wanted to get with DCF and get placement, but they had to have the disposition in order to do that. That's on record page 23. Throughout these proceedings, represented by counsel, the parents went right along with this because this is the outcome they wanted. The issue of neglect... Can I interrupt you a second? Of course. A few minutes ago, I thought you said, maybe I didn't hear it correctly, that everybody at first was on the same page in seeking a no-fault dependency finding. Well, if that's true, what happened? How did we get to where we are if that was the goal for everyone at the outset? No. If I said that, then I misspoke. I may have heard it incorrectly. What I'm trying to represent is that it appears from the record when they came in, everyone was on the same page. The same page was they locked this juvenile out. They did not want him back home because he was doing damage to their other children and to them, physical harm. They did not want him back in. They literally locked him out, did not pick him up at the hospital, and then sought the order from the court. Okay. Let me stop you there. Why isn't that no-fault dependency to what you just described to us? It can be. It can be. But that's not what the state filed in its petition. It filed the neglect provision to allow, as the court pointed out to the parties later on, to allow DCFS to do certain things that they needed to do. The parents did not object to this until very late in the game when the mother said, well, I'm finding out that this might impact my employment. And then the judge says, quite correctly, well, that really doesn't have anything to do with what's in the best interest of the child. I understand that might impact you. And as a matter of grace, I think the court said, look, if there's something that you think I'm missing and you want to bring something back, file a motion to reconsider. They did that. The judge was not persuaded by that basis. Was there some points in this report of proceedings where the judge made certain misstatements, counsel made certain misstatements? Yes. In every place where I marked that in reading through this, someone immediately corrected the other party and said, no, no, I think we're here for disposition. Someone said, oh, I'm sorry, I misstated that. If I were the trial judge in this case, would I have proceeded in a no-fault direction? If I were the state's attorney, would I have filed a different type of petition? Yes. But at no point did the party in this case, the party being the parents, ever object. They asked the court to reconsider. Then when the court came back and reconsidered, they said, okay, I understand. If that accomplishes the goal that we want, we'll go along with it. There is nothing in this record to the state's reading that would justify reversing the trial court's decision. This business about about asking that the court relying solely on a stipulation by the juvenile, again, that was simply because the only person that the court had not yet heard from about this disposition was the juvenile. So when they brought him in by Zoom and he had counsel, he said, look, he's a party to this appeal or this action. Do you stipulate to everything that's in it? To me, that cleaned up. I probably would have done that myself in this bizarre circumstance, just because there were some collateral issues related to criminal acts that the defendant had been involved in, apparently. He's got counsel now. He appears by Zoom. Look, is there anything in this disposition or this allegation that you disagree with? Get a stipulation. Now he's cleaned off the table. And then you can deal with the parents and what they will agree to and what they want done so that we can get the kids some help. And the court mentioned that at almost every proceeding, whenever there was a status, whenever that the dispositional hearing, look, folks, I know this has been a bad situation. We want to get it remedied. We want to get him help. That's the point of this proceeding. And that's what happened. Now, the parents are the basis on which the court did that, but they appear to have no disagreement throughout the record. And even as I read it on appeal with whether the child should be adjudicated or the result of the disposition, they don't like the way in which the court did it, apparently. But the idea that we're going to send this back for a new hearing and the parents are going to come in and say, no, we just want a situation in which we get some help for him, but we want him to return home. That's not what they want. Mr. Robinson, can I ask a question going back to Justice DeArmond's question with regard to authority? Are you arguing that the minor may stipulate in a petition for worship, alleging its own neglect? I mean, how do you deal with that? Yeah, the answer is no, Your Honor. And I don't believe that's what happened here. I know that's how counsel has characterized it. I believe what happened here is everyone was on the same page and the judge brought the child in by Zoom to say, hey, is there anything that you disagree with? Can I get your stipulation? And then he did what he did for the mother in the previous hearing, which was he read through some rights to assure due process. And so I think my reading of it is what the judge was doing was just clearing the deck chairs of any potential issues. And I understand that you've made that argument, but with the stipulation, if it falls short in the proof needed, shouldn't a full hearing have taken place then? I believe a full hearing did take place because at no point did the parents, at multiple points at these hearings, they're asked whether they have any evidence and basically their counsel says no. So all evidence then comes from the stipulation and the allegations in the petition? Correct. In the petition. Okay. So, and again, the petition is very fact-specific about what transpired here. I mean, they refer to it as sort of a lockout petition, and I think sometimes we do that. But I think the petition was very clear. It's a standard form. Rock Islands looks like some other provision at the top of page 2. And then they are very fact-heavy in the petition. So, again, I would just say these parents refused to pick up their adoptive child at the hospital, sought an order from the court that he not be able to come home. They came to court wanting to separate themselves from this juvenile. The court accomplished that goal, maybe not in a way that I would have done it if I were a judge, maybe not in a way that opposing counsel would have done it. But that goal was achieved and there are no allegations in this appellate brief or below contradicting that fundamental fact. The only disagreement that the mother has in this case is the way in which the court accomplished that goal because she was afraid it would affect her job. So, and again, there's no record of whether that even would have affected her job. I assume that's true. Maybe it's not because the court correctly did not take evidence on that because it was irrelevant. And unless the court has any other questions, we would just ask that you affirm. I don't see any questions. Is there any rebuttal? Yes, your honor. For sake of clarity, I think there is some indication that up until the minor stipulation, quote unquote, there was at least, again, it's not quite in the record, but if one were to read around the record, there's apparently some understanding that there is to be a finding of independence. And it seems like the parties were expecting, particularly the respondents in particular were expecting some kind of dependency finding. And I believe in the motion to reconsider was argued that the parties had discussed it and that it was all the parties understanding that that was what they were moving towards. In regards to what relief is being sought, I suppose in a roundabout way, the relief being sought is that due process be done. Because there was no evidence put on, there were no exhibits put on at either the adjudicatory hearing, which under the findings to support the adjudicatory hearing apparently happened on June 1st. Because there was no evidence put on, no exhibits put on, no opportunity to even present really any arguments. Essentially, this was just a means of pushing this case through. Now, does that mean that the outcome would ultimately change or remain the same or would differ in some way? I don't know. And that's not why I'm here. I'm here to make sure that the party received due process. And in terms of this sense of grace regarding a motion to reconsider, I would note that when the court asked, was advising, frankly, the client or the respondents as to whether or not they want to file a motion to reconsider. He also advised them to, I believe he advised them to not file on any other ground other than the basis of mother's employment. Now, I believe I indicated in my report, technically, yes, mother's employment really has nothing to do with this case. That said, if I'm not mistaken, the judge initially made it a finding of dependency. It was only after it was brought up by the state and by other parties that there was any question of whether dependency was the court's actual finding. When it was brought up that the petition was for neglect, the court decided, therefore, well, I guess neglect must be the proper finding based on the lack of evidence that apparently was there. And in regards to the motion to reconsider, the opposing counsel indicates that it's a grace that the court allowed the mother to attempt to file a motion to reconsider and have a hearing. I would indicate it was, frankly, a cruelty. At that hearing, excuse me, the trial counsel filed what seems to be at least an appropriate motion to reconsider. It was set for hearing. The trial counsel attempted to have mother take the stand and present documents and evidence in regards to the matter that the judge said that could be heard at that motion to reconsider hearing. It was then laid out, I believe, by the individual representing DCFS that, of course, that is not a consideration to be considered at an adjudicatory or dispositional hearing. And therefore, the judge effectively said, well, we're not going to hear anything in regards to that. I would also note that the parties could have made that, when the judge was making that statement regarding the motion to reconsider. Plenty of parties could have stood up and corrected the judge on that issue. And I believe the judge, even at the motion to reconsider hearing, even said something along the lines of, well, I never promised that I would change my opinion, which is true. But at the same time, if you're advising someone that they have the right to file that motion to reconsider, I think there's at least some degree of belief that it will be considered by the judge and not summarily dismissed. Regarding whether the petition is clear, like opposing counsel said, it is very fact-dependent, and that is not necessarily a bad thing. That said, 705 ILCS 405-2-13, subsection 2, I believe, states that it needs to be a plain and concise statement of the factual allegations that form the basis for the filing of the petition, and that it has to have citations with an S. Counsel, you are out of time. Thanks, both of you, for your arguments. The case is submitted, and we will stand in recess now until further call.